1                    IN THE UNITED STATES DISTRICT COURT

2                    IN AND FOR THE DISTRICT OF DELAWARE

3                              - - -

4

5    FLASHPOINT TECHNOLOGY, INC.,        )        Civil Action
                                         )
6                  Plaintiff,            )
                                         )
7           v.                           )
                                         )
8    AIPTEK, INC., et al.,               )        No. 08-139-GMS
                                         )        (and other
9                  Defendants.           )         related cases)

10                             - - -
                          Wilmington, Delaware
11                     Friday November 20, 2009
                            2:45 p.m.
12                     Telephone Conference
                               - - -
13
     BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge
14
     APPEARANCES:
15
              JAMES MERKINS, ESQ.
16            Bouchard Margules & Friedlander, P.A.
                        -and-
17            JOSEPH BENZ, ESQ.
              MICHAEL J. DOWD, ESQ.
18            Coughlin Stoia Geller Rudman Robbins LLP
              (San Diego, CA)
19                      -and-
              JOHN F. WARD, ESQ.
20            Ward & Olivo
              (New York, N.Y.)
21
                              Counsel for Plaintiff
22
              RUSSELL E. LEVINE, P.C., ESQ.
23            Kirkland & Ellis
              (Chicago, IL)
24
                              Counsel for Defendant Motorola
25

1    APPEARANCES CONTINUED:

2         KAREN KELLER, ESQ.
          Young Conaway Stargatt & Taylor LLP
3                   -and-
          DAVID C. DOYLE, ESQ.
4         Morrison & Foerster LLP
          (San Diego, CA)
5
                              Counsel for Defendant Kyocera
6
          JOHN G. DAY, ESQ.
7         Ashby & Geddes

8                              Counsel for CellCo,
                              AT&T Mobility, T-Mobile and
9                              Sprint

10
          PETER J. CHASSMAN, ESQ.
11        Howrey LLP
          (Houston, TX)
12
                              Counsel for RIM Corp., Ltd.
13
          JAMES P. BRADLEY, ESQ.
14        Sidley & Austin LLP
          (Dallas, TX)
15
                              Counsel for LG Defendants
16
          HUAN-YI LIN, ESQ., and
17        DREW DIAMOND, ESQ.
          Hogan & Hartson
18        (Los Angeles, CA)

19                             Counsel for HTC and Aiptex

20
              (Others on call not identified.)
21

22

23

24

25

1            THE COURT:  Good afternoon.

2            (Counsel respond "Good afternoon.")

3            THE COURT:  Counsel, what I would like to do is

4    ask only those who are going to participate in this

5    conversation to identify themselves, beginning with the

6

7    plaintiff.

8            MR. MERKINS:  Your Honor, this is James Merkins

9    for FlashPoint at Bouchard Margules & Friedlander.  On the

10   line with me that will be participating is Mike Dowd from

11   Coughlin Stoia.

12            THE COURT:  Thank you.  Good afternoon.

13            MR. MERKINS:  Your Honor, just to address that,

14   I believe, also, the parties that will be speaking for the

15   plaintiffs this morning other than from Coughlin Stoia will

16   be Joe Benz, and John Ward from Ward & Olivo, possibly John

17   Rice from my firm as well.

18            THE COURT:  This may be a more difficult

19   assignment for the defendants.  Are you able to offer me one

20   or two representative voices?

21            MR. DAY:  I think so, Your Honor.  This is John

22   Day from Ashby & Geddes.  I am Delaware counsel for CellCo

23   Partnership and AT&T Mobility.  I will be speaking on behalf

24   of the four cell phone carrier defendants in the case.  In

25   addition to CellCo and AT&T Mobility, I will be speaking on

1    behalf of T-Mobile and Sprint.

2              MR. LEVINE:  Your Honor, this is Russell Levine.

3    I will be speaking on behalf of Motorola.

4              MR. BRADLEY:  Your Honor, this is Jim Bradley

5    with Sidley Austin.  I will be speaking on behalf of the LG

6    entities.

7              MR. CHASSMAN:  Your Honor, Pete Chassman on

8    behalf of Research in Motion.

9              MS. KELLER:  Karen Keller from Young Conaway

10   Stargatt & Taylor.  With me on the line is David Doyle from

11   Morrison & Foerster on behalf of Kyocera.

12             THE COURT:  Anyone else?

13             MR. LIN:  Your Honor, this is Huan-Yi Lin and

14   Drew Diamond from Hogan & Hartson who will speak for HTC and

15   Aiptex.

16             THE COURT:  Okay.  Next?

17             Have we come to the end?  All right.

18             So, counsel, I gather that we are here basically

19   to discuss whether it's appropriate for me to endorse the

20   stay that has been proposed by the plaintiff and at least

21   some of the defendants in the manner that has been proposed

22   by the plaintiff in its amended proposed form of order.  Is

23   that a fair assessment of the issue from the plaintiff's

24   perspective?

25             MR. Benz:  Your Honor, I believe that is a fair

```
 1    assessment, with the caveat that, obviously, there are at

 2    least -- well, there are three competing proposed orders out

 3    there:  one presented by the plaintiff, one filed with the

 4    original motion, and one filed last night by I believe

 5    Motorola.

 6              So the ultimate issue at some point is the stay

 7    pending reexamination.  The issue that we presented to you

 8    in the joint letter yesterday was simply, if you are not

 9    prepared to take up that issue at this point, whether the

10    deadlines that occur between now and when you are going to

11    take up that issue should be stayed pending your decision on

12    the ultimate motion to stay.

13              THE COURT:  Did you say a joint letter of

14    yesterday?

15              MR. Benz:  Yes, Your Honor.  We filed the joint

16    argumentative letter of yesterday at noon.

17              THE COURT:  Could you give me just a moment.

18    Unfortunately, I hadn't seen this.  Let me just take a quick

19    look at it, please.

20              (Pause.)

21              THE COURT:  That is fine.  I appreciate the

22    proposal as far as it goes.  I think that, if I can, I would

23    just as soon take up the issue of whether there should be a

24    stay pending the reexam period.  Anybody have a difficulty

25    with that?
```

1                    MR. Benz:  Plaintiff does not, Your Honor.

2                    MR. DOYLE:  Your Honor, Kyocera, who has brought

3  the motion, does not.

4                    THE COURT:  Anybody who does, does anybody

5  disagree that we should take this up now?

6                    All right.  The silence is deafening.  We will

7  take it up.  Let's hear more about this from plaintiff's

8  perspective.

9                    MR. Benz:  Your Honor, the motion was filed by a

10  number of the defendants, if you count multiple versions of

11  the same entity, ten out of the 40 defendants, to stay the

12  case pending reexam.  Reexam requests were filed for all ten

13  of the patents in suit.  At this point six of those

14  reexamination requests have been accepted and granted by the

15  PTO.  Four have been accepted but not granted as of yet,

16  although I think there is probably very little doubt, based

17  from their statistics, that they will grant those requests

18  for reexamination.

19                    Plaintiff does not oppose staying the case

20  pending the outcome of those reexamination requests.

21  However, we felt that the way the original order was

22  presented allowed for someone to come in six months from now

23  and file another reexam and six months after that come in

24  and file another reexam request.

25                    We simply modified the original order, saying

```
1    that the case be stayed pending the reexaminations which are

2    now on file, to prevent the serialization of reexam filing,

3    which results in delayed resolution of the case almost

4    indefinitely.  Other than that small change to the proposed

5    order, which counsel for Kyocera has joined us in agreeing

6    to -- and they are one of the original movements for the

7    stay on the first point -- we do not oppose a stay at this

8    point.

9                    THE COURT:  Which of the defendants agrees with

10   Kyocera and FlashPoint?  Is it just Kyocera and FlashPoint

11   that agree on the proposed order as revised by FlashPoint?

12                    MR. LIN:  Your Honor, Huan Yi-Lin from Hogan &

13   Hartson for HTC.

14                    Your Honor, HTC also cosigned the motion to

15   stay.  But we are opposed to the condition that the stay

16   should be dependent on the current request.

17                    THE COURT:  I understand.  Anyone else who joins

18   in that position?

19                    MR. LIN:  Aiptek also supports a motion to stay.

20                    THE COURT:  Or defendants that agree with HTC

21   and Aiptek?

22                    Nobody does.  Okay.

23                    Let me hear from the principal movant, please.

24                    MR. DOYLE:  Your Honor, this is David Doyle.

25   Also, thank you for hearing the matter on this expedited
```

1     basis.

2              Kyocera Wireless and Kyocera Communications

3     brought the pending motion to stay due to the pendency of

4     resolutions as to all of the ten patents asserted.  To give

5     the latest update on the status of those reexaminations,

6     nine of the ten have been granted.  There is only one still

7     being considered by the Patent Office and we do expect a

8     granting of that reconsideration request any day now.

9              We brought the motion to achieve the judicial

10    litigation efficiency benefits provided by a stay under

11    these circumstances, of which we know the Court is well

12    aware.  My understanding, although we haven't heard from the

13    other people based on the call, but according to what has

14    been on file, there are eight other defendants that joined

15    the two Kyocera defendants in support of this motion.

16             Again, I know Your Honor is well aware in

17    general of the efficiency benefits that can be achieved

18    through a stay when a reexamination (inaudible).  I wanted

19    to emphasize that here we are not talking theory.  As I said

20    before, the reexamination has been granted on nine out of

21    the ten.  The reexamination of all the issued claims has

22    been granted as to five patents.

23             So every claim on five of the patents is now

24    under reexamination.  And all of the independent claims of

25    seven of the asserted patents are under reexamination.

1               And we just received this morning from the

2     plaintiff the claims that are in fact being asserted by the

3     plaintiff.  And we have done a quick match of those against

4     the reexamination request.  By our consideration it appears

5     that all of the claims being asserted by the plaintiff are

6     included in the reexamination except one dependent claim

7     asserted against one defendant, and that one defendant is a

8     supporter of the stay.

9               So we definitely have a lot of the reasons and

10    the efficiencies that reexamination can provide on our side.

11    And a stay to await those benefits is present in this case.

12              Finally, my only final comment is there was a

13    filing yesterday by three of the defendants saying that the

14    stay should be postponed to allow discovery to get going.

15    But my review of the case law has always indicated to me

16    that courts generally consider it better, not worse, to

17    enter the stay as early as possible in the case, and

18    preferably before discovery starts.

19                   Thank you, Your Honor.

20                   THE COURT:  Counsel, give me your name again.

21                   MR. DOYLE:  David Doyle.

22                   THE COURT:  Mr. Doyle, could you share with the

23    Court -- apparently there is a difference between you and

24    FlashPoint as to the extent of the stay.  You heard, I think

25    it was Mr. Benz, discuss his wish not to have serialization

1    of stays, I think that was the term, that is, successive

2    requests for stays coming in on I guess additional claims, I

3    would imagine.  I am not sure exactly what is meant by that.

4              Could you comment on that?

5              MR. DOYLE:  Your Honor, yes, be happy to.

6              We have joined the plaintiff in their proposed

7    order on the following grounds:  that what the plaintiff has

8    requested is that once all the pending reexaminations are

9    finally resolved by the Patent Office, there would be a

10   status conference with the Court.  And we support that.

11   What would be the proper course for the case at that point I

12   think would depend completely on what has happened in the

13   Patent Office on the reexamination, what if any other

14   reexamination requests have been filed in the interim, if

15   any.  And the situation at that point will need to be

16   evaluated by the parties and the Court.

17             So we have not agreed that means the case will

18   re-commence at that point.  But we do agree that this stay

19   will go through this group of ten reexaminations, and at

20   that point the Court would call a status conference and the

21   parties would then have their opportunity to suggest to the

22   Court how the case should proceed at that point.  And all

23   parties, plaintiffs and all the defendants, are reserving

24   their rights at that time to take whatever position is

25   appropriate at that point in time.

1           THE COURT:  Thank you, Mr. Doyle.

2           Mr. Benz, do you disagree with that approach?

3           MR. Benz:  No, Your Honor, we do not.  That is

4  the approach that we agree with.  As we pointed out in our

5  response motion that was also filed yesterday, we had been

6  having discussions with Kyocera, and Kyocera joined us in

7  the proposed order that we put together.  As Mr. Doyle

8  pointed out, the proposed order that was presented by

9  plaintiff does exactly what he just laid out.

10          THE COURT:  Okay.  My apologies.

11          So who is it among the defendants who wants to

12  speak that disagrees with the approach outlined right now by

13  Mr. Doyle?

14          MR. LEVINE:  Your Honor, we disagree with the

15  approach because we believe that it's premature.  When

16  looking at whether or not to stay a case pending reexam, one

17  of the factors that the Court looks at is whether a stay

18  will simplify the issues in the case.  At this point in time

19  in this particular case, we don't yet know if the claims

20  that are subject to reexam are going to be rejected by the

21  Patent and Trademark Office.  There have been no office

22  actions that have issued yet.  And if so, Mr. Benz will

23  amend those claims --

24          THE COURT:  Mr. Levine, I may interrupt from

25  time to time.

1              Is that the point in time at which the Court

2    typically addresses the issue, that is, once there have been

3    office actions and the like?

4              MR. LEVINE:  There is no definitive rule or

5    point in time.

6              THE COURT:  I would agree with you on that.  Go

7    ahead.

8              MR. LEVINE:  I believe that when courts look at

9    the issue, that they are looking at the issue to say, Do I

10   have enough today to determine whether or not a stay would

11   simplify the issues.  Certainly, when there has been an

12   office action and a claim amendment, and the parties have

13   had their meet-and-confers over what the claim terms are

14   that are in dispute and what those proposed terms mean, we

15   are all in a much better position to say, hey, you know

16   what?  This particular case with these particular disputes

17   and amendments and office actions would be a case that would

18   be in a position where a stay would simplify.

19             But we don't know that.

20             THE COURT:  Aren't we often in that situation

21   you described a good distance down the discovery road and

22   thus well into litigation budgets by that time?

23             MR. LEVINE:  Not necessarily.  In the schedule

24   that we have in this case, the parties are to exchange claim

25   terms on December 17th.  We are to exchange proposed

1    constructions on January 21st, then to meet and confer on

2    February 11th, and submit the joint claim construction chart

3    on February 18.

4              Our suggestion is on February 18th, when we

5    supply the Court with the joint claim construction

6    statement, that at that time we also supply the Court with

7    two-page letters, saying whether we think at that time it is

8    appropriate, given what water has gone over the dam by then,

9    really only two and a half months from now, I think we will

10   be in a much better position to know whether the case would

11   be simplified as a result of the stay.

12             THE COURT:  Let me ask you this question.  It

13   has to do with delay.

14             Let's assume we accept that approach.  When

15   would you anticipate the Court addressing those two-page

16   letters and reconvening this conference and making a

17   decision?  How quickly, optimally, would you envision that

18   happening?

19             MR. LEVINE:  Our suggestion is that we would

20   have a teleconference with the Court during the week of

21   February 22nd.

22             THE COURT:  It's not possible.  I can't

23   accommodate you on my schedule.  I can tell you that off the

24   top of my head.

25             MR. LEVINE:  The reason we suggested that was to

1   try and time it to occur before the first claim construction

2   brief went in.

3               THE COURT:  Only if it could be done that way, I

4   might agree with you, Mr. Levine.  But I, as you might

5   know -- and you have been in front of this Court before, you

6   have litigated frequently in Delaware -- and I am sure you

7   are aware of the fact that we have had a vacancy extant for

8   now going on three years.  And given that fact and the

9   consequent press of business on this Court, our dockets, all

10  three of us are completely packed, not only with complex

11  civil matters, but perhaps more importantly with criminal

12  matters that now three judges are doing the work of four in

13  the criminal arena, where we have constitutional

14  prescriptions that we must follow and statutory, with regard

15  to things like, small little things like speedy trial.

16              That is why I ask the question.  I don't mean to

17  be unduly facetious.

18              Counsel, you sort have got to open your eyes as

19  to the reality of the Court's docket.

20              Go ahead, Mr. Levine.

21              MR. LEVINE:  Your Honor, we certainly are

22  cognizant of that.  And that was one of the reasons for

23  structuring our proposal in a way that the parties, all of

24  us on the phone today, would be working in December,

25  January, and February to see how we could simplify and

1  tailor this case, and then come back to Your Honor before

2  there would be anything on the document that would

3  necessitate the Court's involvement, such as reading through

4  the claim construction briefs and preparing for a Markman

5  hearing.

6          So that is why we suggested the procedure that

7  we did, so as to allow us to really crystallize what's in

8  dispute between all of us, what is the date of conception

9  and reduction to practice.

10          THE COURT:  I understand your position, Mr.

11  Levine.

12          Does anyone else want to weigh in on this, with

13  something new?

14          MR. DAY:  Yes, Your Honor.  This is John Day.

15  If I may speak on behalf of the phone carrier defendants.

16          THE COURT:  Go ahead.

17          MR. DAY:  We are on somewhat different footing

18  than most of the other defendants in the case.

19          Your Honor may recall that from the beginning of

20  the case the position of the cell phone carriers has been

21  that this really isn't our fight, that FlashPoint's case is

22  really against the manufacturers of the handsets and that we

23  are really simply customers of those handset manufacturers,

24  who are the real parties in interest with respect to

25  FlashPoint's infringement case.

Your Honor may also recall that at the scheduling conference, the Court graciously gave us an opportunity to address that point with FlashPoint, and went back to chambers and allowed us to discuss and try to reach a mutual accommodation of a way to get the cell phone carrier defendants out of the case promptly.  And we were able to reach that agreement, and Your Honor incorporated it into the scheduling order in this case.

So from the perspective of the cell phone carrier defendants, Your Honor, our only problem with the stay is that it is going to keep us in the case when we had reached an agreement with FlashPoint to get us out of the case promptly.

We have carried out our end of the bargain.  We agreed on or before June 30th to identify for FlashPoint all of the manufacturers or suppliers of our handsets.  All of the cell phone carriers have done that.  A couple of the carriers went beyond what they were required to do and even provided FlashPoint with contact information for the lawyers for those manufacturers to facilitate getting them in the case and getting us out of the case.

And the order contemplated that FlashPoint would use its best efforts to add those manufacturers into the case and then dismiss us.

We just want to be out of the case, frankly,

Your Honor.  We have complied with our end of the bargain.

We are concerned that FlashPoint hasn't taken reasonable

efforts to join any of those handset manufacturers who we

identified and provided contact information for.  None of

them have yet been added to the case.

We find ourselves in the position of potentially

now getting stayed and remaining in the case beyond the time

to which we agreed.

On behalf of the cell phone carriers, we would

suggest that while we aren't opposed to a stay, we are

opposed to a stay that includes us.  Perhaps a fair and

simple way to resolve that issue would be for FlashPoint to

do what they agreed they would do after they added the

parties we identified.  That is, dismiss us without

prejudice.

THE COURT:  Thank you, Mr. Day.

MR. DAY:  So we won't be estopped.

THE COURT:  Mr. Benz, would you please respond,

not yet to Mr. Levine's points, but Mr. Day's.

MR. Benz:  Your Honor, I will respectfully yield

to my colleague, Mr. Ward.

MR. WARD:  Good afternoon, Your Honor.

We actually don't have any serious problems with

the carriers.  They have been forthcoming.  They have given

us names of their manufacturers.  Unfortunately, right now,

1   I don't think they would be particularly prejudiced by the

2   stay.  If it gets lifted and we have claims that we can

3   assert, then we would replace them with the manufacturers.

4   But, Your Honor, right now we are in a difficult position,

5   because as much as we would like to file an amended

6   complaint naming the manufacturers and getting them involved

7   in the case, right now the claims that we would assert are

8   the subject of reexamination, so we have a pleading problem.

9              THE COURT:  What can be done creatively to

10   address Mr. Day's concerns as soon as possible, after

11   reexam, assuming I would grant the stay?

12             MR. WARD:  After reexam, Your Honor, assuming we

13   have claims that come back out that we can assert, we would

14   substitute in the manufacturers that the carriers have

15   identified and be willing to dismiss without prejudice all

16   the carriers.  We are in that position, Your Honor.  But I

17   am not in a position where we can file that amended

18   complaint and meet our pleading requirements.

19             THE COURT:  Mr. Day, Mr. Ward seems to have a

20   reasonable problem there and remains, however, willing to

21   abide by the commitments he made earlier.  Why don't you

22   react.

23             MR. DAY:  I must respectfully disagree with Mr.

24   Ward.  I don't understand the problem.  They agreed to

25   dismiss us without prejudice.  And I don't see any harm to

1   them in living up to that agreement rather than holding us

2   in the case longer than what was agreed to.

3           We are talking about a handful of manufacturers

4   who need to be added, less than five.  It will be easy for

5   them to add them.  If there is some problem down along the

6   line, the dismissal will be without prejudice, and they

7   perhaps could try to add us back into the case.

8           We in good faith bargained to get out of the

9   case early.  They agreed to it.

10          This is not the first time they have tried to

11  get out of that agreement.  Your Honor may also recall that

12  when they submitted the proposed scheduling order, they

13  tried to extend the stay that they agreed to and sort of

14  wriggled out of it.  Your Honor quite rightly tried to get

15  them to cooperate directly with the scheduling that was in

16  order.

17          I don't see a problem with a dismissal without

18  prejudice.

19          THE COURT:  I understand your point.  Let me ask

20  you this:  Would the carrier defendants be, assuming a stay

21  and a dismissal without prejudice, would the carrier

22  defendants be willing to come back in should it be

23  determined by the plaintiff, by FlashPoint, that for some

24  reason, good-faith reason were necessary, that you would

25  come back in without a fight?

1              MR. DAY:  That is a difficult question to answer

2    without talking to my client, Your Honor.  Perhaps some of

3    the lead counsel for the cell phone carriers may have

4    already had that discussion.  But I have not.

5              THE COURT:  Anybody prepared to answer that

6    question?

7              (No response.)

8              THE COURT:  It's mighty quiet out there today.

9              MR. WARD:  Your Honor, speaking on behalf of

10   FlashPoint, that is a separate issue.  We would be happy to

11   pursue that with the carriers and see what creative

12   solutions we could come up with.

13             THE COURT:  Mr. Ward, I am somewhat inclined to

14   Mr. Day's point of view.  You have got an agreement:  They

15   get dismissed without prejudice.  I understood your earlier

16   point, but I am not quite sure why you are not willing to

17   abide by the deal that was made.

18             MR. WARD:  I think we have always had some level

19   of disagreement as to what the actual agreement that we came

20   to was.  Our position would be that we certainly agreed that

21   if we had manufacturers in the case standing in the shoes of

22   carriers, then we would be willing to dismiss the carriers.

23   But until that happens, then the carriers are still

24   responsible for infringing sales, Your Honor.  And we are

25   disinclined to dismiss them and try to get them back in

1    later.  It is certainly easier to keep then in as opposed to

2    bringing them back later.

3            MR. DAY:  Your Honor, may I respond to that?

4            THE COURT:  Yes, may.

5            MR. DAY:  Mr. Ward may think there is some

6    misunderstanding about what was agreed to.  But it's stated

7    pretty clearly in the Court's scheduling order.  And the

8    language from the scheduling order required us on or before

9    June 30th to identify the manufacturer or supplier of cell

10   phones that are sold with a camera.  We did that.

11           Discovery was then to be stayed to allow them

12   time to bring -- identify unlicensed manufacturers or

13   suppliers into the case.  And then the scheduling order says

14   on or before May 20th, 2010, which was the period of time

15   that that stay against the carrier defendants, discovery

16   against the carrier defendants was entered on that

17   scheduling order, On or about May 20 plaintiff shall dismiss

18   its claims without prejudice against each carrier defendant

19   and non-manufacturing defendant unless and only to the

20   extent it was unable through reasonable efforts to add the

21   manufacturers or suppliers of accused camera phones or

22   cameras for any such defendant.

23           We gave them the identities of those

24   manufacturers almost five months ago.  As far as we can

25   tell, they have done nothing to add those manufacturers to

1    the case.  We gave them the phone numbers for some of those

2    manufacturers, who have not heard from FlashPoint in five

3    months.

4              So I think it's pretty clear that there haven't

5    been any reasonable efforts to add them, and that under this

6    circumstance, the scheduling order requires them to dismiss

7    us.

8              MR. WARD:  Your Honor, I don't know what the

9    Court could possibly do with that (inaudible)  pretty far

10   offer.

11             We have taken steps.  We have an amended

12   complaint ready to go.  As I previously explained, we are

13   not in a position to file that now given the request for

14   reexamination.

15             The carriers aren't going to be prejudiced in

16   any way just standing on the sidelines if the Court should

17   grant a stay, and once the stay is lifted, we can file the

18   amended complaints, if the manufacturers come in.

19             And certainly the language that Mr. Day just

20   read clearly provides that they are getting out if and only

21   if the manufacturers are able to be added to the case.

22   Until that happens, Your Honor, certainly the stay is going

23   to provide that the carriers aren't prejudiced in any way.

24   If and when the Patent Office reissues these patents, we

25   will be in a position to file the amended complaint and soon

1      thereafter we will let the carriers go.

2              THE COURT:  Mr. Day, what is -- I can imagine

3      what you might say -- but what is the prejudice that would

4      be suffered by the carrier defendants, again, assuming that

5      the stay were granted, that you would suffer?

6              MR. DAY:  I can tell you, Your Honor, that -- a

7      couple of things.  One is that although discovery against

8      the carrier defendants has been stayed since June 30th, when

9      we identified the cell phone manufacturers, this litigation

10     has still cost each of the cell phone carrier defendants,

11     because their lawyers have had to monitor what's been going

12     on in the case even though it has been stayed against us for

13     a number of months at a not inconsiderable expense.

14             I expect that that would be true to some extent

15     for the remainder of the stay.  Instead of being out of the

16     case promptly, which is again what both parties agreed to,

17     we would be in the case even though stayed, spending money,

18     monitoring what's going on, keeping up with the e-mail

19     traffic and everything else.

20             Secondly, with respect to prejudice, the

21     prejudice is that we are being denied the benefit of our

22     bargain that we reached through good-faith negotiations,

23     which was a prompt dismissal.

24             THE COURT:  Mr. Day, let me get you to address

25     Mr. Ward's point that you're really not being denied the

1    benefit of the bargain because the date -- I think it's May.

2              MR. DAY:   That is true.   We are not yet to May.

3    But the stay now being looked at conceivably could go on for

4    a couple of years.   We could be in this case for a long

5    time.

6              THE COURT:   I have not kept up with how long

7    reexams are taking of late.   I did have a handle on that at

8    one point, but I don't any longer.

9              UNIDENTIFIED SPEAKER:   I daresay I certainly

10   think, Your Honor, it's fair to say, we wouldn't be out by

11   May.

12             THE COURT:   Why couldn't we revisit this issue

13   specifically in that respect for the plaintiff and carrier

14   defendants in May?

15             MR. DAY:   The carrier defendants would be

16   willing to do that, Your Honor.

17             THE COURT:   How about FlashPoint?

18             MR. WARD:   We are willing to do that, Your

19   Honor.

20             THE COURT:   I am going to ask that you come up

21   with some language, unless I am persuaded not to stay.

22             Mr. Benz, I think it is you who needs to

23   responds to Mr. Levine's points.

24             MR. Benz:   Yes, Your Honor.

25             Quite frankly, I disagree with Mr. Levine's

1  point that the appropriate time is not now before we engage

2  in a significant amount of additional discovery.

3           The point of staying pending reexams is judicial

4  economy and simplification of the case, and the recognition

5  that during the reexam process, statistics show that a

6  number of claims get canceled, a number of claims get

7  modified and some claims make it straight through.

8           With that being the backdrop, it seems

9  inefficient to continue with discovery where we are going to

10  come up with a list of claim terms, some of which terms may

11  not be in the claims anymore if they get modified during the

12  reexamination process.

13           So everything I have seen -- and I haven't seen

14  anybody present any case law to the contrary -- all the case

15  law that I have seen and decisions coming out of courts,

16  again, the earlier the stay is granted, the more beneficial

17  it is in the interests of judicial economy and litigation

18  costs on the part of the parties.  The benefits just greatly

19  outweigh any sort of continued litigation expense, both for

20  the Court and for the parties.

21           THE COURT:  I agree with your point of view, Mr.

22  Benz, and disagree decidedly with Mr. Levine's stated

23  position, respectfully, and agree with you as well.  I have

24  addressed this issue of stay many times, as I think probably

25  you all know, and have come out on both sides.  Though I am,

1    perhaps reliably, reported as having granted more stays than

2    most trial judges do, than a lot of us do in the country.  I

3    don't think that is still accurate, because of late I have

4    denied a number.

5              In any event, regardless of that, my inclination

6    and my ruling is to accede to the relief requested by the

7    plaintiff and agreed to at least by certain of the

8    defendants, to the specific proposal that has been outlined

9    and agreed to by Kyocera and FlashPoint and Aiptek and HTC.

10             MR. BRADLEY:  Your Honor, for LG Electronics.

11             May I raise a new point?

12             THE COURT:  No, not until I am finished talking.

13             Mr. Benz, I am going to ask that your prepare a

14   new order that also accounts for Mr. Day's concerns.

15             Obviously, Mr. Day, you will participate in the

16   preparation of that order.  That will require us to revisit

17   the continued involvement of the carrier defendants in light

18   of the agreement that is reflected in the scheduling order.

19   Okay?

20             MR. DAY:  I understand, Your Honor.

21             MR. BRADLEY:  Your Honor, this is Jim Bradley on

22   behalf of LG Electronics.

23             Your Honor, we may not oppose a stay.  We

24   believe it is premature from the standpoint that FlashPoint

25   has not yet identified for us the basis for its infringement

1    contentions.  Back in August we served a very basic set of

2    interrogatories asking for their contentions, seeking --

3            THE COURT:  When was that filed, counsel?

4            MR. BRADLEY:  That was served on August the

5    21st.  And the response was objections by FlashPoint that we

6    would get this in the November 19th submission of their

7    asserted claims and accused products.

8            We just got that this morning.  I have seen it

9    only a few hours ago.

10            What our interrogatories suggest and what we

11   think we are entitled to, particularly if there is going to

12   be some extended delay in this case, is, in addition to

13   providing the basis for their infringement allegations, that

14   they provide us with the requested charts showing how the

15   claims relate to the accused products and whether or not the

16   contentions are that we directly infringe or indirectly

17   infringe and what entities use, or, as we asked, to carry

18   out the method steps.  Is it the user who operates the

19   camera?  Is it the programmer who develops the software?  Or

20   is it the manufacturer?

21            Our position is that it is premature, and we

22   don't have any basic answers to basic questions as to why

23   FlashPoint believes we infringe.  If we got those answers,

24   we would not oppose a stay.

25            MR. Benz:  Your Honor, again, the argument is

the same as Mr. Levine's.  At this point, with 141 claims

being in reexamination, we don't know how those claims are

going to come out.  As premature as he thinks the stay is,

it's premature to put together a list of infringement

contentions when you don't know how those particular claims

are going to come out when they come out of reexamination.

Therefore, the purpose of the stay is to allow

the administrative process to run its course, to either

issue the claims as they are now, to cancel claims, to

modify claims, and at that point we will have a clearer

picture of exactly how the claims read and how those claims

read onto the infringing products.

THE COURT:  Has any other defendant interposed

similar requests to which you have responded?

MR. Benz:  Your Honor, we received basically the

same request from most of the defendants for infringement

contentions.  Our objections were at the time --

THE COURT:  I meant other than by objection.  I

should have been more precise.  Other than by objection.

MR. Benz:  I am not sure I understand your

question.

THE COURT:  Mr. Bradley has asked what he has

asked for, the basis of the infringement allegations, the

requested claim charts, what entities infringe.  Have you

responded to similar interrogatories substantively?

1          MR. Benz:  Negative, Your Honor.

2          THE COURT:  Mr. Bradley, why don't you react to

3    Mr. Benz's point concerning the reason for a request for a

4    stay at this point.

5          MR. BRADLEY:  Thank you, Your Honor.

6          Yes, FlashPoint knows and has identified

7    particular claims that they allege infringe certain

8    products, so they must have known at the time they filed the

9    complaint and certainly now they have a basis for reading

10   those claims on the accused products and showing us on an

11   element-by-element basis.

12         THE COURT:  I got you.  I agree with that.

13         Let me interrupt for just a second.  Isn't it

14   more likely that the issues will be better focused and the

15   ability of the plaintiff to respond and not to have to amend

16   responses would occur, be extant, after reexam than today?

17         MR. BRADLEY:  We don't think necessarily so in

18   that we are looking for FlashPoint's present contentions.

19   FlashPoint has pointed out that the statistics indicate it

20   could be two or three years, where they are going to be

21   designing manufactured products, without an ability to know

22   of what FlashPoint's allegations are against us.  How do

23   they think we infringe?  What is their work product?

24         They ought to be able to provide it to us to

25   identify the contentions.  In fact, in the proposed order

```
 1    submitted by FlashPoint, they did want mediation to continue

 2    to occur.  I don't know how we could sit down without an

 3    understanding of their infringement contentions, based on

 4    claim terms.  If the claim terms change in the future,

 5    perhaps.  But at this point in time, when things may be

 6    frozen for the next couple of years, our client needs to

 7    know.

 8               MR. CHASSMAN:  Your Honor, Pete Chassman for

 9    Research in Motion.

10               We have the same concern and it is likely that

11    the unamended terms, their contentions would be not a good

12    place to start --

13               THE COURT:  What you are talking about is the

14    commercial realities out there.

15               Mr. Benz, it doesn't seem to me to be an

16    unreasonable request, given someone who is alleging

17    infringement's responsibility to conduct a reasonable

18    investigation and understanding its infringement position

19    prior to filing the complaint.

20               MR. Benz:  I agree with that, Your Honor.  Our

21    prefiling investigation, obviously, as you know, is work

22    product and it would only come into play if someone would

23    raise a legitimate and substantial Rule 11 --

24               THE COURT:  Here is the thing:  It is going to

25    come to pass that at some point you are going to respond to
```

1     those requests.  I don't understand the harm in doing that

2     now.  You may have to amend them at a certain time.  I don't

3     see the harm to that, and I can see the benefit,

4     particularly from a commercial point of view, as to the

5     defendants raising this issue -- and I suspect this is all

6     of them -- of their compliance, of trying to function in a

7     marketplace given this thin lining over them, trying to

8     design products and at least given some pretty

9     straightforward accusations, your clients' accusations of

10    infringement.

11           What is the prejudice to that?  Don't tell me

12    about judicial economy.  Go ahead.

13           MR. Benz:  Your Honor, I understand.  Again, the

14    point is that, again, we look at the statistics as much as

15    everyone else does and understand that a number of our

16    claims will have to be amended.  And therefore, to at this

17    point put out some sort of contentions when we don't even

18    know what the language of the claims are going to be when we

19    go forward I believe is prejudicial to us.

20           By the same token, as strongly as we disagree

21    with the fact that we should have to produce infringement

22    contentions, our interrogatories were actually served a

23    month before defendants', and we asked for their invalidity

24    contentions, and we do not have those to date.

25           At this point, it seems, if the Court is

1    inclined to stay the case, the case should be stayed and we

2    should not produce infringement contentions.  They should

3    not produce invalidity contentions.  We should let the

4    administrative process work through its course and pick it

5    up when the patents are reexamined.

6              THE COURT:  Mr. Bradley.

7              MR. BRADLEY:  That does not concern the

8    commercial risk of not knowing of the patentee's position as

9    to how they think we infringe.  They talk about the

10   invalidity contentions.  I think they are fairly well set

11   forth in the reexamination petitions, where the prior art

12   has been cited to them.  Additional art may be discovered to

13   go forward.  Looking at statistics and reexamination, as we

14   note I think in our paper, something like 59 percent of the

15   cases -- there is one independent claim that is confirmed.

16             We are at a risk for the next two or three

17   years.  Suit was filed in 2008, March.  We are asking now

18   for an identification of their theory of infringement.  We

19   are interested to be informed at some point.  We think we

20   are entitled to it now.  There are millions and millions of

21   dollars worth of product at stake, and FlashPoint keeps us

22   in the dark.

23             THE COURT:  I am going to rule that the stay

24   should be granted with the previous conditions discussed and

25   that counsel provide in the order, the stipulated order, the

1   additional requirement that they respond to the contention

2   interrogatories outlined by Mr. Bradley and other defendants

3   of a similar nature, and that, Mr. Bradley, your client and

4   other defendants to whom FlashPoint has interposed such

5   requests regarding your invalidity positions, that you

6   respond to those in more than just the fashion you have

7   outlined.  That is, that you actually formally respond.

8              MR. BRADLEY:  Yes, Your Honor.

9              THE COURT:  The order should reflect those two

10  things in addition to the need to come back at the behest of

11  the parties after the patents come out of reexam or however

12  you couched it, along with the May issue raised by Mr. Day.

13             Any questions about that?

14             MR. Benz:  Your Honor, when would you like to

15  see that order?

16             THE COURT:  I think it will require some further

17  discussion by counsel.  How long do you think you will need?

18             I hope that I have made my intentions clear.  I

19  don't want there to be a debate.  Is there any

20  misunderstanding as to what I intend?

21             MR. Benz:  No, Your Honor, I don't believe so.

22             THE COURT:  The other side agrees?

23             MR. BRADLEY:  Yes, Your Honor.

24             UNIDENTIFIED SPEAKER:  Yes, Your Honor.

25             THE COURT:  How long do you think it will take

1    you to get a stipulated order together?  A week?

2                MR. Benz:  That is acceptable, Your Honor.

3                THE COURT:  Other side?

4                UNIDENTIFIED SPEAKER:  When we say week, I

5    wanted to remind everybody that next week is Thanksgiving.

6                THE COURT:  Let's say two weeks.  December 4.

7                UNIDENTIFIED SPEAKER:  Thank you, Your Honor.

8                MR. Benz:  Thank you, Your Honor.

9                THE COURT:  You are welcome.  Take care.  Have a

10   good Thanksgiving.

11               (Conference concluded at 3:22 p.m.)

12                         -   -   -

13   Reporter:  Kevin Maurer

14

15

16

17

18

19

20

21

22

23

24

25